IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

KEVIN HAMMONS,

    Plaintiff,

v.  No. 04-2243-B/P

LASIK VISION INSTITUTE, LLC, et al.,

    Defendants.
_____

**ORDER GRANTING MOTION OF DEFENDANT, DAVID S. MURPHY, M.D.,
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**
_____

On September 6, 2006, the Court entered an order denying the motion of the Defendant, David S. Murphy, M.D., for summary judgment. The Court determined in that order that the Defendant's motion, although styled as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, was in fact a request to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction over this Defendant. In its ruling, the Court noted that Murphy had not requested an evidentiary hearing. In the absence of such a hearing, the Court was required to consider the pleadings and affidavits in a light most favorable to the Plaintiff. Furthermore, the Court was not to weigh the controverting assertions of the party who sought dismissal and the Plaintiff was only required to make a *prima facia* showing of jurisdiction. See Dean v. Motel 6 Operating L.P, 134 F3d 1269, 1272 (6th Cir. 1998). Upon consideration of the pleadings, the Court denied Murphy's request for dismissal. On September 15, 2006, the Defendant filed a motion for an evidentiary hearing and/or to reconsider or modify the September 6 order. The Court thereafter conducted an evidentiary hearing on November 16, 2006, at which time testimony was elicited and additional legal authority was presented for the Court to consider whether Murphy was subject to personal jurisdiction in this lawsuit.

At the hearing, the Defendant, David Murphy, testified that he lived and practiced his profession of ophthalmology in Arkansas. He denied ever living or working or having an office in Tennessee. Because he was not licensed in Tennessee, Murphy claimed he was not permitted to see or has seen patients in this State. He had previously been associated with the co-Defendant, Lasik Vision Institute, LLC, ("LVI") for which he performed lasik procedures from July, 2002 until April, 2003. His work only occurred in a mobile unit in Arkansas. He never signed any written contracts with, or owned any stock in, LVI. He considered himself an independent contractor, but never an employee, of LVI. Murphy had no involvement in determining where the location of the mobile unit would be and recalled that less than one to two percent of his surgical business was with LVI. In reviewing his office notes, Murphy remembered seeing the Plaintiff, Kevin Hammons, on April 18, 2003 for the first time in West Memphis, Arkansas at the mobile unit of LVI. He also saw Plaintiff again on April 20, 2003 at the same location. When Murphy saw Hammons on April 20, 2003, he performed an eye wash-out at the LVI mobile unit. Murphy denied ever being to Collierville, Tennessee and stated he had no professional relationship with another physician, Nia Koa, an optometrist who was also a co-Defendant in this litigation. Murphy related that he was paid $150.00 for his treatment of Plaintiff on April 18 and April 20, 2003. Introduced as an exhibit to Murphy's testimony was a Hampton Inn motel receipt (in West Memphis) of April 20, 2003 where Defendant stayed for his work at that time. He also submitted his operating room log of April 20, 2003 for the time he saw Hammons at the LVI unit in Arkansas.

On cross-examination, several documents were introduced through Dr. Murphy, including patient information forms, consultation worksheets for Plaintiff, pre-op and post-op operation assessment forms and patient consent forms. Murphy claimed that he depended on LVI and the doctors it chose to complete proper forms and for those doctors to perform appropriate pre-operative examinations. Murphy was aware that LVI did have doctors in Tennessee with whom it worked and he knew that some of his patients were in fact from

Tennessee. Finally, Dr. Murphy admitted that Dr. Koa would refer patients to him for surgery and that he, Murphy, would then refer them back to Koa for follow-up treatment.

The next witness was Fridae Hammons, the wife of the Plaintiff, who drove her husband to West Memphis, Arkansas on April 18, 2003 where he underwent a lasik procedure in the early afternoon. On April 20, 2003, she stated that she took the Plaintiff to Collierville and went to an eighteen wheeler truck similar to the one she accompanied him to in West Memphis, Arkansas. She remembered being on the parking lot of Pearle Vision Center and was there until around 4:00 p.m. that day. She was emphatic in stating that on April 20, it was Collierville, Tennessee, where she went, although she may have been wrong in her prior deposition testimony when she indicated that it was elsewhere. On cross-examination, Mrs. Hammons recalls that she did not speak to a health care professional on April 20, 2003 and did not speak or talk to the Defendant, Dr. Murphy. In her deposition of November 13, 2006, she did state under oath that she assumed that if others said it was West Memphis where she was on April 20, then she would be wrong. However, she again insisted that she was sure it was Collierville where she transported her husband on April 20, 2003.

The next witness was Greg Dinkman, presented by video deposition. Dinkman lives in Nashville, Tennessee and has worked for LVI since 2000. According to his recollection and records, on April 18, 2003, the mobile unit owned by LVI was located in West Memphis, Arkansas. At that time he was an operating room technician and the procedure performed on the Plaintiff on April 20, 2003 occurred in West Memphis, Arkansas. He does recall that after the last procedure of the day, the mobile unit was broken down and moved to Collierville. He stated Dr. Murphy never performed any procedures in Tennessee and all operations on April 20, 2003 took place in the mobile unit in West Memphis. The general practice would be that the truck would be broken down and moved toward the end of the day to the next location, but it could have been different times when the technicians left one location and moved to

another. However, Dinkman never recalled performing procedures at two different locations on the same day. Introduced as part of the record was the deposition of Dinkman as well as the log book of the driver of the mobile unit, Mr. Ritter, credit card receipts of Ritter, and a receipt from a septic tank company which indicated that the mobile unit was pumped out in West Memphis, Arkansas.

Josh Stanberry, who worked for LVI since 2001 and was director of mobile services, next testified. He stated that there were three mobile units owned by LVI in 2003 and one unit served Collierville. Mr. Ritter was the driver of that unit. According to Stanberry, from April 18 through April 20 of 2003, the mobile unit was located in West Memphis, Arkansas. None of LVI's units were ever in Collierville on the dates of April 18 through April 20, 2003. Stanberry recalled that Dr. Murphy was paid on a per procedure basis and he would send invoices to LVI who would then compensate him. Murphy did not have any authority to move the mobile units.

The Plaintiff, Kevin Hammons, testified that he lives in Olive Branch, Mississippi and is employed as Vice-President of Professional Services. He recalled that Dr. Murphy operated on his eyes in April of 2003. He stated that he had seen an advertisement about lasik surgery in a local newspaper which described Memphis as the location of the number to call for interest in the procedure. Introduced as an exhibit was an ad for the surgery. Hammons called the number and was directed to the Pearle Vision Center in Collierville where he met a representative of LVI. The representative rescheduled Plaintiff to return in two weeks and discussed with Hammons a price which was purported to be $800.00 per eye. According to Hammons, that price somewhat surprised him. At the time of his initial visit, Dr. Nia Koa examined Hammons, following which a person by the name of Ashley with LVI scheduled the surgery. It was initially to be performed in March but later rescheduled to April of 2003. Hammons recalled that all of his pre-operative visits were in Collierville. He stated that LVI

called and advised him that his surgery would be in West Memphis, Arkansas on April 18, 2003.

On April 19, 2003, Hammons recalled that he had a follow-up visit in Collierville, Tennessee and then again on April 20, 2003 with the Defendant, Dr. David Murphy, also occurring in Collierville. He stated that he was certain that Murphy saw him in Tennessee at that time, and performed a wash-out of Plaintiff's eye. In his first deposition, Plaintiff related he last saw Dr. Murphy on April 18, 2003, but in his second deposition, he remembered that it was actually April 20, 2003. On cross-examination, Hammons testified that the mobile unit was in fact not in Memphis on April 19 and that Dr. Murphy was not there when Hammons had his follow-up visit on that date. The wash-out procedure on April 20 in the mobile unit was performed by someone else, not Dr. Murphy, but Plaintiff did recall that the last time he saw Murphy was on April 20, 2003.

The final witness was Norman A. Ritter, whose testimony was also presented by way of video deposition. Ritter had been a truck driver since 1968 and worked for LVI from 2002 through 2005. In April of 2003, Ritter transported the mobile unit, a fifty-tree foot tractor trailer, from one location to another for surgeries. His job was to ensure that the mobile unit was moved and set up. According to his DOT log book, the tractor trailer was in West Memphis, Arkansas on April 18, April 19 and April 20, 2003. Ritter stated he arrived in West Memphis, Arkansas at 10:15 a.m. on April 15, 2003 and was there until April 20, 2003. His log book also reflected that he left at approximately 5:30 a.m. on April 21, 2003 from West Memphis. He purchased supplies for the mobile unit using the company credit card and presented a statement for those charges for April of 2003. On April 20, 2003, he charged supplies at Walgreens in West Memphis. He stated that he knew Dr. Murphy who worked out of Little Rock and recalls Murphy working in West Memphis but never witnessed the Defendant in Tennessee with the mobile unit. Ritter claimed he moved the unit from West

Memphis to a shopping center in Collierville, Tennessee around 6:30 a.m. on April 21. Again, Ritter stated that Dr. Murphy was not in Collierville on the 20th. The witness maintained that he did not take the truck to Collierville for a wash-out before April 21 and that he was the only person who could break the truck down and drive it. He recalls staying at the Hampton Inn in Arkansas during the April, 2003 period in question.

Inasmuch as the Court has now conducted an evidentiary hearing on Defendant Murphy's motion to dismiss for lack of jurisdiction, and permitted the parties to take discovery and submit additional evidence to the Court, the procedure to be followed in such a jurisdictional determination is to consider the controverting assertions of the party seeking dismissal as well as to consider the credibility of the evidence presented and determine from all the proof whether the Plaintiff has established by a preponderance of the evidence that jurisdiction over Murphy exists. See Dean v. Motel 6 Operating L.P., 134 F.3d at 1272. The Court has also reviewed the previous evidentiary matters presented by the parties, including the deposition of the Plaintiff, Kevin Hammons, and the affidavits of the Defendant, Murphy, and the Plaintiff. Upon consideration of the evidence presented by the parties, the Court concludes that the Plaintiff has failed to establish by a preponderance of the evidence that this Court has personal jurisdiction over the Defendant Murphy. As has been outlined in the evidence presented to the Court, and basically this evidence is unrefuted, Murphy is a physician practicing in Arkansas and has never conducted any medical procedures in Tennessee. The Court does recognize that Hammons stated in his affidavit that he saw the Defendant physician on April 20 2003 in Collierville, Tennessee. However, in his deposition, which was relied on by the Defendant in his previous motion for summary judgment, the Plaintiff affirmed under oath, on more than one occasion, that he did not see Dr. Murphy when he had the wash-out of his eyes on April 20th, even after having requested to see the Defendant. In fact, the Plaintiff stated that the individuals he saw at the mobile unit in Collierville on April 20th were a completely different group than the people he saw on April

18th at the time of his surgery in West Memphis, Arkansas.  See Deposition of Kevin Hammons, at pages 130-139.  Likewise, the testimony of Mrs. Hammons was equivocal in her recollection that she had taken her husband on April 20th to Collierville, although she conceded that she did not at that time see or speak to the Defendant, Dr. Murphy.  All of the other witnesses who testified and who were bolstered by documentation confirm that the mobile unit where the lasik surgery was performed was located in West Memphis, Arkansas on April 20th.  Likewise, the mobile unit did not leave West Memphis until the morning of April 21st and at that time it was driven by Mr. Ritter to Collierville, Tennessee where it was set up.  All of these witnesses agreed that at no time was Dr. Murphy present in Tennessee.  With the Court's finding that the Plaintiff has failed to establish by a preponderance of the evidence that Murphy was present in Tennessee to perform any procedures on him, Hammons has simply failed to establish that jurisdiction existed over the Defendant in this State.

In the case of Creech v. Roberts, 908 F.2d 75 (6th Cir. 1990), on Ohio resident filed a lawsuit in Ohio State Court against an out-of-state physician as well as a hospital with whom the physician was associated for medical malpractice.  The case was removed to federal court.  Apparently, the hospital had advertised in Ohio soliciting patients for a particular medical center and as a result of that activity, the Plaintiff in Creech attempted to establish jurisdiction over this nonresident physician.  Faced with the identical issue on the question of personal jurisdiction over the doctor, the Sixth Circuit found as follows:

> The Court has been unable to find, and Creech does not cite, any case in which a trial court has asserted personal jurisdiction over a nonresident doctor who committed a tortious act outside the forum state - even where the doctor worked for a hospital that advertised in the forum state.  Indeed, every case reported seems to reach the opposite result.  See e.g. Pijanowski v. Cleveland Clinic Foundation, 635 F. Supp. 1435, 1436 (E.D. Mich. 1986); Lemke v. St. Margaret Hosp., 594 F. Supp. 25, 27 (N.D. Ill. 1983).

Creech, 908 F.2d at 80.  As a result of that finding, the Sixth Circuit reversed the trial's assertion of personal jurisdiction over the physician and dismissed the claim against him.

This Court in its order of September 6, 2006, outlined the legal rationale for the exercise by a federal court of personal jurisdiction in a diversity case and that jurisdiction as it applies to cases which originated within Tennessee. The Court incorporates its discussion of "general" and "specific" jurisdiction as to the manner in which those concepts may be applied. In summary, in order to establish general jurisdiction, the Defendant's contacts must have been substantial and continuous, which in this case the Court finds that Dr. Murphy's activities lacked those continuous contacts. As for specific jurisdiction, a state may only exercise jurisdiction over a Defendant for acts that arise out of or are related to the Defendant's contacts with the forum. Again in this case, all of the acts alleged to have been committed by Murphy occurred in Arkansas. The sole act that tied this Defendant to Tennessee was the alleged wash-out that occurred on April 20, 2003. This Court has found that such wash-out was not performed by Murphy and, thus, disregards that assertion by the Plaintiff for the purposes of finding personal jurisdiction over the nonresident doctor.

Accordingly, having considered all of the evidence presented both by the Plaintiff and the Defendant, in the original filed motion for summary judgment, the response thereto and the subsequent evidentiary hearing, this Court is of the opinion that the Plaintiff, Kevin Hammons, has failed to establish personal jurisdiction over the Defendant, David S. Murphy, and therefore, the claim against him must be DISMISSED.

**IT IS SO ORDERED** this 12th day of July, 2007.

                                                   s/ J. DANIEL BREEN
                                                 UNITED STATES DISTRICT JUDGE